UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD HOLMES,

        Plaintiff,                    Civil Action No. 21-cv-12521

v.

                                    HON. MARK A. GOLDSMITH

UNITED STATES OF AMERICA,

        Defendant.
_____/

**OPINION & ORDER
(1) GRANTING DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF FROM OFFERING EXPERT OPINION AND FOR SUMMARY JUDGMENT (Dkt. 34) AND (2) AMENDING CASE CAPTION**

Plaintiff Leonard Holmes brings this suit in negligence against the United States of America under the Federal Tort Claims Act (FCTA) following a vehicle collision involving an FBI employee. Before this Court is the Government's motion to preclude Holmes from offering expert testimony and—based on Holmes's resulting inability to show that the collision caused Holmes's injuries—for summary judgment (Dkt. 34). For the reasons that follow, the Court grants the Government's motion.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the issues will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Holmes's response (Dkt. 38) and the Government's reply (Dkt. 41).

The Court also amends the caption of this case to reflect that the United States of America—not the United States of America, Department of Justice, Federal Bureau of Investigation—is the proper defendant.

1

## I. BACKGROUND

Holmes alleges that, at about 3:50 p.m. on November 18, 2019, he was operating a truck near the intersection of Harper Avenue and Newport Street in Detroit, Michigan. Compl. ¶ 6 (Dkt. 1). He brought his vehicle to a stop. Id. While he was stopped, Timothy Hoff—a special agent with the FBI—collided with Holmes's truck in Hoff's Chevrolet Impala. Id. ¶ 7. The Government does not dispute that Hoff ran into Holmes's truck. See Br. in Supp. Mot. at 2 (citing Hoff. Dep. at 23 (Dkt. 34-4)).

Holmes went to Ascension St. John Hospital in Detroit later on the day of the accident, where hospital records indicate that he "complain[ed] of chest pain, back pain, and numbness and tingling in both of his arms and legs." Hospital Records at PageID.277 (Dkt. 34-5). Holmes now attributes "numerous serious and permanent injuries" to the accident, "not limited to herniated discs in his back and neck, resulting in multiple medial branch nerve block injections, injury to his right knee, and surgical placement of a spine stimulator." Br. in Supp. Resp. at 6.

However, the Government notes that Holmes was involved in a second accident less than three months later, on February 10, 2020, when his truck was rear-ended. Br. in Supp. Mot. at 5 (citing Holmes. Dep. at 169–176 (Dkt. 34-3)). When asked if he suffered any injuries from that second accident, Holmes responded: "it kind of just like, almost like started everything all over again as far as the pain goes." Holmes Dep. at 174.

The Government submits that Holmes also suffered a lower back injury from a bus accident in the 1980s that never fully healed, as demonstrated by Holmes's testimony that he never again felt comfortable lifting heavy objects. Br. in Supp. Mot. at 5–6 (citing Holmes Dep. at 20–22, 25, 28–29). In the Government's view, Holmes has suffered from medical issues relating to his back, neck, and legs for years before the accident at issue in this case, demonstrated in part by:

2

- a November 2012 visit to the emergency room during which Holmes complained of symptoms including neck pain and tingling in his legs, id. at 6 (citing 11/8/12 Hospital Record (Dkt. 34-7); Pl. Dep. at 46–48);

- Holmes's complaints in April 2013 of upper, middle, and lower back pain that resulted in x-rays revealing "mild to moderate degenerative change in [Holmes's] mid-lower thoracic spine and minor degenerative change . . . within the lumbar spine," id. at 6–7 (quoting 4/15/13 Record (Dkt. 34-8)); see also id. (citing Pl. Dep. at 48–51 (reflecting Holmes's testimony that he "was getting some moderate issues in [his] spine that obviously [were] the reason for some of this pain that [he] was receiving then"));

- Holmes's complaints in February 2015 of back and neck pain, id. at 7 (citing 7/19/15 Record (Dkt. 34-11); Pl. Dep. at 54–56);

- A July 2015 trip to the emergency room during which Holmes claimed that his legs "gave out," resulting in an x-ray revealing degenerative changes in his shoulders and spine, id. at 7 (quoting 7/19/15 Record (Dkt. 34-11)); see also id. (citing Pl. Dep. at 54–57);

- Holmes's complaints in October 2015 of pain on the right side of his neck which Holmes stated he had experienced for "several y[ea]rs," and which resulted in an x-ray of his cervical spine revealing "moderately advanced degenerative changes," id. (quoting 10/8/15 Record (Dkt. 34-12)); see also id. (citing Pl. Dep. at 58, 63, 65–66); and

- a January 2017 trip to the emergency room during which Holmes complained of symptoms including pain in his right shoulder and paresthesia down his right arm and leg, which resulted in a computerized tomography scan showing "significant arthritic changes" in Holmes's cervical spine, id. at 7–8 (quoting 1/15/17 Record (Dkt. 34-13)); see also id. (citing Pl. Dep. at 67–70).

Holmes offers no opposition to the Government's characterization of his medical history. See Resp.

Holmes asserted this claim in negligence under the FCTA. See Compl. His expert disclosures were due November 28, 2022. See 2/8/22 Order (Dkt. 13). It is undisputed that Holmes failed to submit any expert disclosures.

## II. ANALYSIS

The Government moves for summary judgment, arguing (i) that Holmes should be excluded from presenting expert testimony and (ii) that, without expert testimony, Holmes cannot

3

satisfy Michigan's requirements for demonstrating that the accident with Hoff caused Holmes's alleged injuries. The Court addresses each argument in turn.

### A. Exclusion of Expert Testimony

It is uncontested that Holmes failed to serve any disclosures for any of his purported experts—either retained or non-retained—as required under Rule 26(a)(2). Holmes filed a document titled "Plaintiff's Witness, Expert Witness and Exhibit List" on November 28, 2022, his deadline for filing expert disclosures. See Pl. List (Dkt. 23) (capitalization modified). This document lists 24 "potential expert[s]" listed under categories including "treating physicians," "nurses aids," "record keepers," "radiologists," and other health care professionals. Id. at 2–5. This witness list identifies another eight individuals identified as "EXPERT[S]" in fields including radiology, psychiatry, and accident reconstruction. Id. at 5–6. However, it does not contain—and Holmes did not submit separately—the vast majority of the information required of an expert witness, including (i) a written report articulating a complete statement of all opinions the witness would express and the basis and reasons for those opinions, as is required of a retained expert, see Fed. R. Civ. P. 26(a)(2)(B), or (ii) the subject matter on which the witness would present evidence under Federal Rule of Evidence 702, 703, or 705 and a summary of the facts and opinions to which the witness would testify, as are required of a non-retained expert, see Fed. R. Civ. P. 26(a)(2)(C).

The Government submits that it called Holmes's attention to the failure to serve expert disclosures in two separate letters, both sent within about a month of Holmes's filing of his witness list. See Br. in Supp. Mot. at 10–11 (citing 12/19/22 Letter (Dkt. 34-14); 1/4/23 Letter (Dkt. 34-15)). The Government even invited Holmes to "serve proper expert disclosures with sufficient time left in the discovery period to permit their depositions." 1/4/23 Letter. The Government submits that Holmes never responded to these letters or served expert disclosures, see Br. in Supp. Mot. at 11, which Holmes does not deny, see Resp.

4

The Government argues that Holmes should be prohibited from relying on his purported experts under Rule 37, which states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., 388 F.3d 976, 983 (6th Cir. 2004) (punctuation modified). The party asserting substantial justification or harmlessness bears the burden of proof. See R.C. Olmstead, Inc., v. CU Interface, LLC, 606 F.3d 262, 270 (6th Cir. 2010) (affirming exclusion of expert report not compliant with Rule 26(a)).

Holmes suggests that he means to rely on the expert testimony of only his treating physicians—i.e., non-retained experts who are not required to provide written expert reports. See Resp. at 7–8. Even if the Court accepted this position, however, Holmes would still be required to comply with the requirements of Rule 26(a)(2)(C), which he does not—and cannot successfully—argue that he has done.

Holmes presents no argument that his failure to abide by Rule 26 was "substantially justified" under Rule 37; rather, he submits that his non-compliance was "harmless" under that standard. Resp. at 6–9. Holmes states: "Throughout the course of discovery, Plaintiff repeatedly made reference to his treating physicians and supplied multiple authorizations so Defendants could obtain voluminous medical records which detailed the history, examinations, consultations, [and] surgeries." Id. at 7. Holmes notes that, during his own deposition, "it was clear that Defendant displayed an in depth understanding of the medical records which he received and reviewed before taking Plaintiff's deposition testimony." Id. at 9. Acknowledging that he has not complied with

5

Rule 26, Holmes "asserts that [he] has given enough discovery to Defendant to make up for this shortcoming." Id. at 8. In Holmes's view, it would be sufficient at this stage of the proceedings for "Plaintiff to provide[] Defendants with a brief paragraph of what his treating physicians will testify to." Id. at 9. Holmes never took this step.

Conversely, the Government contends that Holmes's noncompliance was not harmless because—as a result of Holmes's failure to identify the experts who would testify at trial and to provide required information including the subject matter of their testimony—"Defendant had no way to determine which experts to depose among dozens identified." Reply at 1. The Government notes that it could not have deposed all of Holmes's numerous listed experts, due to both expense and a presumptive limitation of ten depositions. Id. at 5 (citing Fed. R. Civ. P. 30(a)(2)(A)(i)). In the Government's view, Holmes's provision of extensive medical records is not an adequate substitute for the expert disclosures specifically delineated by the Federal Rules of Civil Procedure. Id. at 6 (citing Gleed v. AT&T Servs., Inc., No. 13-12479, 2016 WL 1451532, at *5 (E.D. Mich. Apr. 12, 2016) (granting motion to preclude expert testimony under Rule 37 where plaintiff failed to comply with Rule 26(a)(2)(C) and rejecting plaintiff's argument that defendant should have "deduced what opinions his treaters would offer" based on "hundreds of pages of medical files")).

The Court agrees with the Government that Holmes's failure to abide by the disclosure requirements of Rule 26(a)(2) was not harmless and that, therefore, Holmes "is not allowed to use" any purported expert witness testimony at trial. Fed. R. Civ. P. 37(c)(1). The Court rejects Holmes's proposal that he can provide a list naming over 30 experts or "purported expert[s]" in lieu of the disclosures required by Rule 26, and then rely on the volume of discovery to evade the specific requirements set forth in the Federal Rules of Civil Procedure. "[T]he mere production of

medical records <u>does not</u> satisfy subsection (C) disclosure requirements." <u>Gleed</u>, 2016 WL 1451532, at *5 (emphasis in original).

The Government would be harmed if Holmes were permitted to rely on the expert testimony of some unspecified number of still-unidentified treating physicians. The discovery period is over, and so the Government would have "no time . . . to secure rebuttal expert witnesses" or to "depose Plaintiff's treating physicians." <u>Id.</u> at *7; <u>see also</u> <u>Terhune v. Cooksey</u>, No. 20-cv-611, 2022 WL 1644620, at *5 (W.D. Ky. May 24, 2022) (finding that failure to comply with Rule 26 was not harmless and excluding testimony where there was still "remaining confusion" about subject matter of purported expert's opinion) (punctuation modified). And Holmes's failure to correct the deficiencies in his disclosures after the Government drew them to his attention further emphasizes the appropriateness of excluding his expert testimony. <u>See</u> <u>Booth v. Aldrich</u>, No. 09-11178, 2010 WL 955791, at *1 (E.D. Mich. Mar. 15, 2010) (ordering that plaintiff not be allowed to rely on testimony of purported expert where she failed to submit compliant Rule 26 disclosure, stating: "Importantly, Plaintiff was informed by Defendants that the required report was missing nearly five months ago, and the defect still has not been remedied. Plaintiff has not demonstrated that the 'failure was substantially justified or harmless.'") (quoting Fed. R. Civ. P. 37(c)(1)).

Holmes's noncompliance with Rule 26(a)(2) was not harmless. The Court finds that Holmes is precluded from introducing any expert witnesses at trial. Fed. R. Civ. P. 37(c)(1). The next question before the Court is whether Holmes has a triable issue of fact without the support of any expert testimony.

B.  **Summary Judgment**[2]

Liability under the FTCA is determined by reference to state law. See Premo v. United States, 599 F.3d 540, 545 (6th Cir. 2010). Under Michigan law, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Mich. Comp. L. § 500.3135(1).

Holmes's suit rests on the theory that he suffered a "serious impairment of body function," which requires a showing that his alleged "impairment" meets three elements:

> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.
>
> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.
>
> (c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. . . . This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

Mich. Comp. L. § 500.3135(5).

Holmes correctly observes that establishing liability under Mich. Comp. L. § 500.3135 does not strictly require medical testimony in all circumstances. See Resp. at 9. Rather, "showing

---

[2] In assessing whether the Government is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

an impairment generally requires medical testimony." McCormick v. Carrier, 795 N.W.2d 517, 528 (Mich. 2010) (emphasis added).

Nonetheless, to prevail on his claim, Holmes must marshal sufficient evidence to, "at a minimum, demonstrate a causal relationship between his injury and the accident." Lopez-Garcia v. United States, 207 F. Supp. 3d 753, 759 (E.D. Mich. 2016) (granting Government's motion for summary judgment on "serious impairment of body function" claim where plaintiff failed to present sufficient "evidence establishing a causal relationship between [plaintiff's] injuries and the accident") (citing Mehdi v. Gardner, No. 319630, 2015 WL 1227710, at *2 (Mich. Ct. App. Mar. 17, 2015) (affirming grant of summary disposition to defendant where "plaintiff presented no evidence linking his conditions to the vehicle accident.")).

Holmes submits: "Relating to causation, Plaintiff has produced ample evidence that there is a connection between the accident and his injuries . . . ." Resp. at 10. If Holmes intends to rely on multiple categories of admissible evidence, he has failed to identify those sources for the Court or to attach them as exhibits to his response. Presumably Holmes means that his position finds support, in part, from hospital records and other evidence indicating that he was complaining of physical symptoms in the aftermath of the accident with Hoff. However, "a general reference" to "medical records suggesting that he suffered an injury . . . without some facially apparent connection to the underlying trauma—or an expert opinion establishing same—is not enough." Lopez-Garcia, 207 F. Supp. 3d at 759 (emphasis in original).

Holmes suffered injuries due to a bus accident in the 1980s; complained of physical symptoms relating to his back, neck, and leg for years; experienced the vehicle collision at issue in this case in November 2019; and experienced another collision in February 2020. He now complains of medical issues relating to his back, neck, and knee. As is extensively demonstrated

9

by the Government's caselaw and consistent authorities, Holmes cannot survive summary judgment without presenting evidence demonstrating that the accident at issue here was the cause of his alleged physical impairment.[3]  He has failed to do so.

---

[3] See, e.g., Kittle v. United States, No. 19-13076, 2021 WL 5741289, at *8–*9 (E.D. Mich. Dec. 2, 2021) (granting summary judgment to defendant on Mich. Comp. L. § 500.3135(5) claim, explaining: "[Plaintiff] suffered from herniated and bulging disks prior to the accident, and so without some causation evidence or expert testimony, there is no basis to reasonably infer that the herniation three months after the accident was attributable to the accident. . . .  And [Plaintiff's] failure to produce medical evidence connecting her impairment to the accident is especially significant in light of her extensive medical history involving the same areas of the body and similar pre-accident impairments.") (punctuation modified); Saad v. Reddy, No. 348030, 2020 WL 5587687, at *3–*4 (Mich. Ct. App. Sept. 17, 2020) (affirming grant of summary disposition where plaintiff had been in multiple car accidents and where plaintiff had "failed to establish an objective impairment and demonstrate causation" explaining: "Simply offering medical records documenting plaintiff's status after the third collision is insufficient to establish a causal link between that status and the accident."); Peeples v. Canfield, No. 341599, 2019 WL 1746840, at *3 (Mich. Ct. App. Apr. 18, 2019) (affirming grant of summary disposition, stating: "The only evidence that plaintiff presented that could have established an objectively manifested impairment was the orthopedic report. . . .  Yet that report . . . does not establish that the impairment was due to the accident."); Sanders v. Allstate Ins. Co., No. 331946, 2017 WL 3090570, at *2 (Mich. Ct. App. July 20, 2017) (affirming grant of summary disposition, explaining: "Although [plaintiff's] complaints of neck and arm pain were newly reported after the accident, plaintiffs failed to present objective evidence of an accident-caused injury as their source. . . . [Plaintiff's] new complaints . . . , without medical testimony of an underlying accident-caused injury as its source, were insufficient to create a question of fact that the accident caused a third-party tort threshold impairment."); McCarthy v. Lipps-Carbone, No. 326715, 2016 WL 4268247, at *2 (Mich. Ct. App. Aug. 11, 2016) (affirming grant of summary disposition where "plaintiff failed to introduce any affidavits from her treating physicians that stated that, in their professional opinion, the accident exacerbated or aggravated her existing symptoms," concluding: "plaintiff failed to present sufficient evidence that defendant's actions were a cause in fact of her injuries."); Lopez-Garcia, 207 F. Supp. 3d at 759; Mehdi, 2015 WL 1227710, at *2.

Holmes seeks to distinguish a single case cited by the Government, correctly pointing out that this case applied Kentucky law, not Michigan law.  See Resp. at 11 (citing McFerrin v. Allstate Prop. & Cas. Co., 29 F. Supp. 3d 924 (E.D. Ky. 2014)).  But even if the Court accepts that McFerrin has minimal persuasive value, Holmes's argument is unable to bear the great weight of Michigan case law requiring evidence to establish a causal link between an accident and an alleged impairment.

Holmes identifies a single specific source that he considers sufficient to establish causation: the testimony of the Government's expert witness, Theresa Oney. See Resp. at 10. This argument fails on multiple grounds.

First, as the Government correctly observes, see Reply at 6–7, the United States Court of Appeals for the Sixth Circuit "generally forbids a party from calling the opposing party's expert as a witness at trial." R.C. Olmstead, Inc. v. CU Interface, LLC, 657 F. Supp. 2d 899, 903 (N.D. Ohio 2009), aff'd, 606 F.3d 262. Holmes presents no argument why this case presents the unusual situation where a plaintiff should be allowed to forego the responsibility of preparing his or her own expert, instead relying entirely on a witness prepared at the defense's expense. "This result would incentivize parties to shirk their discovery duties and rely on the opposition's trial materials instead of preparing their own," which "has no support in the case law . . . ." Est. of Majors v. Gerlach, No. 16-cv-13672, 2022 WL 17834358, at *1 (E.D. Mich. Dec. 21, 2022) (denying request of plaintiff who failed to file her own witness and exhibit lists to rely on witness and expert lists filed by defendants).

And Oney's testimony would be insufficient to establish causation even if Holmes could rely on it at trial. As Holmes now emphasizes, see Resp. at 10, Oney—a physician specializing in physical medicine and rehabilitation who examined Holmes and his medical records—opines:

> It is my medical opinion that the examinee did sustain soft tissue injuries following the motor vehicle [accident] consisting of a cervical and lumbar strain injury, right shoulder sprain injury and bilateral hip and bilateral knee contusion injuries as well as a mild concussion.

Oney Rep. at 32 (Dkt. 38-5) (emphasis added).

Oney states that Holmes had suffered an injury following the November 18, 2019 accident, but the fact "[t]hat a condition temporally follows an event is not in itself evidence of causation." Mehdi, 2015 WL 1227710, at *2. Oney conducted her medical evaluation of Holmes on November

11

1, 2022—that is, <u>after</u> Holmes had experienced both the November 18, 2019 and February 10, 2020 accidents. <u>See</u> Oney Rep. at 1. Noting that Holmes "did not disclose to [Oney] . . . that he was involved in a second motor vehicle collision," Oney submits that she "cannot say with any medical certainty the status of Mr. Holmes' injuries following the motor vehicle collision that occurred on November 18[,] 2019 at the time of the second accident on February 10, 2020." <u>Id.</u> at 31. Especially given Holmes's convoluted medical history, he cannot rely on such an ambiguous statement merely establishing a temporal connection between two events to demonstrate that they were causally linked.[4]

Further, even if he could rely on the opposition's expert, Holmes would be unable to clear the third hurdle of a Mich. Comp. L. § 500.3135(5) claim: that the impairment "affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. . . ." Mich. Comp. L. § 500.3135(5)(c). "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." <u>McCormick</u>, 795 N.W.2d at 530. Expert testimony is needed to make this comparison because Holmes's medical history reveals multiple possible causes for the injuries that

---

[4] As Holmes notes, Resp. at 10, Oney also offers a more definitive causal statement: "It is my medical opinion that Mr. Holmes sustained a mild traumatic brain injury as a result of the motor vehicle collision on November 18[,] 2019. Oney Rep. at 31. But, as the Government observes, "[t]he inquiry is not whether Holmes was injured at all"; rather, it is whether the accident with Hoff caused a "serious impairment of a body function." Reply at 7. Focusing on injuries to his neck, back, and knee, Holmes does not assert that his "mild" brain injury met that standard. <u>See</u> Resp. at 6 (identifying "herniated discs in his back and neck, . . . injury to his right knee, and surgical placement of a spine stimulator" as "serious and permanent injuries"); <u>id.</u> at 10 ("[I]t is readily accepted that the back, neck, and knees are important bodily functions."). Nor would Oney's report support the supposition that this injury qualified under Mich. Comp. L. § 500.3135(5); she goes on to note that "[d]iagnostic studies" of Holmes's head and brain were "negative for any acute injuries[,] which is reassuring," and that "Mr. Holmes does not report any ongoing cognitive complaints as a result of the motor vehicle collision . . . ." Oney Rep. at 31.

may have impacted his ability to lead his normal life. Oney provides no support for Holmes's implied argument that Holmes's ability to lead his normal life was different after the specific collision at issue here. See Oney Rep. And there is no expert offered by Holmes, supported by expert disclosures, to make that assessment. Holmes has insufficient evidence available to prevail on this prong of his claim. See Bartos v. United States, No. 17-11059, 2018 WL 4005523, at *8 (E.D. Mich. Aug. 22, 2018) (granting motion for summary judgment to defendant where "Plaintiff's assertion that the accident impaired her general ability to lead her normal life [was] not supported by evidence in the record," explaining: "Plaintiff's back and chest issues existed years before the accident," and "Plaintiff does not dispute that she also suffered from bladder issues, chest pain, knee pain, and low-back pain for years prior to the accident.").

### IIII. CONCLUSION

For the reasons stated above, the Court grants the Government's motion to preclude Holmes from offering expert testimony and for summary judgment (Dkt. 34).[5]

SO ORDERED.

Dated: August 15, 2023          s/Mark A. Goldsmith
       Detroit, Michigan        MARK A. GOLDSMITH
                                United States District Judge

---

[5] The Court also amends the caption to reflect that the United States is the proper defendant in this case. Holmes brought suit against the FBI. See Compl. (naming as Defendant "United States of America, Department of Justice, Federal Bureau of Investigation"). The Government submits that this Court lacks subject-matter jurisdiction, correctly noting that the proper defendant in an FTCA action is the United States, not an agency of the United States. See Br. in Supp. Mot. at 23–24 (citing Mynatt v. United States, 45 F.4th 889, 894 n.1 (6th Cir. 2022)). But the Government has represented to this Court that it is not contesting subject-matter jurisdiction, see, e.g., Answer at 3 (Dkt. 8); Joint Discovery Plan at 2 (Dkt. 10), and defense counsel have proceeded as if they are representing the United States, see, e.g., Answer. The Court finds that it has subject-matter jurisdiction and amends the caption to reflect the proper parties in this case.